Richard A. Hoyer (SBN 151931)
*rhoyer@hoyerlaw.com*
Ryan L. Hicks (SBN 260284)
*rhicks@hoyerlaw.com*
Nicole B. Gage (SBN 318005)
*ngage@hoyerlaw.com*
HOYER & HICKS
4 Embarcadero Center, Suite 1400
San Francisco, CA 94114
*tel* (415) 766-3539
*fax* (415) 276-1738

Attorneys for Plaintiff
TRACY HANKINS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRACY HANKINS,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>CALIX INC. and DOES 1-25,<br><br>　　　　　　Defendants, | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1) **Unequal Pay in Violation of the California Equal Pay Act and Title VII**<br>2) **Gender/Sex Discrimination in Violation of Title VII**<br>3) **Retaliation in Violation of Title VII**<br>4) **Retaliation in Violation of Title VII and §1981 of the Civil Rights Act of 1866**<br>5) **Race Discrimination in Violation of Title VII and §1981**<br>6) **Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA")**<br>7) **Failure to Accommodate in Violation of the ADA**<br><br>**DEMAND FOR JURY TRIAL** |

[ADDITIONAL COUNSEL ON FOLLOWING PAGE]

COMPLAINT FOR DAMAGES

*Additional co-counsel for Plaintiff*
*Pro hac vice admission pending*

Amos N. Jones
jones@amosjoneslawfirm.com
Su Mi Park
park@amosjoneslaw.com
AMOS JONES LAW FIRM
1150 K Street NW
Washington D.C., 20005
tel (202) 351-6187

COMPLAINT FOR DAMAGES

**INTRODUCTION**

1.   Plaintiff Tracy Hankins – a currently employed Cloud Solutions Specialist who has worked at the technology behemoth since 2017 – brings this case against Defendant Calix Inc., for illegal discrimination based on her race, gender, age, and disability status, and illegal retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, §1981 of the Civil Rights Act of 1866, 42 U.S.C., 29 U.S.C. §§ 623(a)(1), Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a), and the California Fair Pay Act, Labor Code Section 1197.5, having timely filed her claims with the U.S. EEOC on October 4, 2018, and having received her right-to-sue Notice on August 17, 2019.

2.   Over the course of her employment, as alleged and pleaded *infra*, Plaintiff was underpaid, sidelined, maligned, discriminated against, and retaliated against for reporting misconduct that included, among other transgressions:

3.   Plaintiff was the first Cloud Solutions Specialist hired in her department at Calix Inc. on March 20, 2017, and was the only woman and the only African-American in her role for the duration of her employ. On April 25, 2017. her supervisor, S. Eyre, told guests at an office meeting to "stop acting like pussies," a statement that deeply offended her. When director of software development Laurie Harvey, the only woman present besides Plaintiff, exclaimed "Hey!" in dismay, Mr. Eyre replied, "Aw, come on."

4.   Bob Carrick, a white male, began work October 16, 2017, in the same Cloud Solutions Specialist role as Plaintiff. Around that time, Plaintiff became aware that the company was planning to hire a Senior Cloud Solutions Specialist. Plaintiff, who had seniority over Mr. Carrick and the other male Cloud Solutions Specialist, asked to be considered for the position, but Mr. Eyre told her in an October 18, 2017 conversation that he "couldn't do it." The week of November 13, 2017, with less than a month on the job, Mr. Carrick was promoted to the senior position by Mr. Eyre.

5.   On October 31, 2017, Plaintiff attended a business convention in Las Vegas, Nevada, during which she had a conversation with Richard Link, a professional colleague employed by Calix. Mr. Link invited Plaintiff, who formerly had worked at Windstream, to attend

COMPLAINT FOR DAMAGES

Windstream's business session at that conference and discuss possible business. Plaintiff observed Mr. Carrick eavesdropping on that conversation.

6. The next day, Plaintiff attended a dinner meeting at which Tim Pillow, Vice President who services the Century Link account, queried whether Plaintiff planned to wear "a nice dress and heels" to meet the Century Link business contacts in person.

7. Subsequently, Plaintiff began working to establish Windstream as a client. In November 2017, Plaintiff became aware that Mr. Eyre may have plans to take the Windstream opportunity from her and give it to Mr. Carrick. In emails and phone calls on Friday, November 10, 2017, and again on Monday, November 13, 2017, Plaintiff petitioned Mr. Eyre to let her keep the account in light of her work to establish it. On or about November 27, 2017, Mr. Link contacted Plaintiff and informed her that Mr. Carrick had been assigned to take over the account work with Windstream. He prefaced the news with, "So what are we, a one-night stand?" Plaintiff found the comment to be offensive because she and he had a strictly professional relationship. The transfer of accounts resulted in Mr. Carrick receiving credit and commission for a $6-million deal with Windstream, and subsequently Mr. Eyre would transfer all of Plaintiff's major accounts to Mr. Carrick.

8. On January 31, 2018, at Calix's annual sales kickoff event at the Westin Hotel in San Francisco, the company's Senior Vice President for Marketing, Matt Collins, gave remarks at a session in which he criticized the marketing approach of Executive Vice President for Sales Michael Weening and called him a "pussy." The comment deeply offended Plaintiff. Mr. Collins then, in reference to Chinese software-development business partners who were participating via livestream video, remarked about "R&D coming from shithole countries." Plaintiff, again, was deeply offended. The Chinese company cancelled their two contracts with Calix within 48 hours, effectively cancelling half of Plaintiff's applications portfolio.

9. In July 2017, Plaintiff formulated an innovative way to integrate clients' current mapping software with Calix product. Plaintiff presented the concept to several companies, but was rebuffed by Eyre, who the following month admitted that it was a "good idea" after witnessing Plaintiff present a demonstration to an enthusiastic customer. On November 7,

COMPLAINT FOR DAMAGES

2017, Michael Weening lauded the idea and Plaintiff at a CenturyLink Executive Briefing Session, saying in a recorded and live-streamed presentation about the concept: "Tracy, hate to steal your thunder…" Theft literally took place in December 2017, when Calix hired Jeff Lundgren, a white male, as a cloud specialist and Plaintiff was ordered to transfer the concept to him, along with the Frontier Communications account that Plaintiff had presented the idea to in October 2017 alongside Calix account representative Kelly Mikah. Plaintiff was then forced to teach Mr. Lundgren the concept she had created and to do customer presentations as he observed her and studied her presentations about the product that had been posted on the Calix website.

10. Plaintiff suffered a stroke because of the duress. She was placed on medical leave and began working from home on April 9, 2018. Plaintiff wrote to Human Resources in October 2018 that she wanted to return to work. She requested an accommodation to work part-time (20 hours per week), but she was told in writing that the position was not designed for part-time hours. However, at approximately the same time, a similarly situated white male was given a lighter workload and fewer work days to accommodate his cancer.

11. Plaintiff continues to remain on medical leave indefinitely, recovering at home, disabled in the prime of her professional life.

## INTRADISTRICT ASSIGNMENT

12. Substantial parts of the events alleged by Plaintiff occurred at the company headquarters, including illegal decisions made by company executives. The headquarters are in San Jose, California, 95134, and accordingly, this case should be assigned to the San Jose Division, pursuant to rule 3-2(c) of the Local Rules of the Northern District of California.

## PARTIES

13. Plaintiff Tracy Hankins is a 49-year-old, African-American woman, and she has been employed at Calix Inc., as a cloud solutions specialist, since March 2017.

14. Defendant Calix Inc. is a global provider of cloud and software platforms, systems, and services. Calix is a publicly traded company with headquarters in San Jose, California, and offices in Petaluma, California; Richardson, Texas; and Nanjing, China.

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action is based on federal antidiscrimination statutes.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(d), because Defendant is headquartered in San Jose, California.

**BACKGROUND**

17. Plaintiff filed her EEOC complaint with the California Department of Fair Employment and Housing and the EEOC on October 4, 2018.

**FACTUAL ALLEGATIONS**

**A.  Pay Discrepancies Between Plaintiff and Other Similarly Situated Male Employees**

18. Plaintiff first learned of a pay discrepancy between male and female employees from Eric Mal in December 2017. He inadvertently informed her that he was offered a salary greater than the Plaintiff's, for the exact same position and role in the company. Mr. Mal also informed Plaintiff that he had been offered a guaranteed bonus to join the company. He further informed Plaintiff that their team colleague Bob Carrick, who signed with the company at the same time as Mr. Mal, was offered and was being paid the same salary and perks. Mr. Mal was unfortunately subsequently terminated on February 9, 2018 for disclosing this information to members of the Calix infrastructure sales team. He was deemed "not a good cultural fit for Calix." Plaintiff again met with Mr. Mal on March 9, 2018, and Mr. Mal confirmed the pay discrepancy facts to her.

19. Bob Carrick was promoted to Senior Cloud Solutions Specialist within one month of his employment start date, despite the fact that he had no tenure, merit, or product experience. Plaintiff, on the other hand, was denied promotion to Senior Cloud Solutions Specialist, despite her extensive years of experience. She was instructed by her superiors to hand over her largest and most lucrative accounts to Mr. Carrick. When Plaintiff asked her supervisor, S. Eyre, the reason why she was denied a promotion, the only response she got was: "I very well can't do that."

COMPLAINT FOR DAMAGES

20. On or about November 6, 2017, Plaintiff was instructed to begin giving Mr. Mal all of her Calix Support Cloud deals. She had previously petitioned on October 15, 2017 to keep these deals, but was rejected. Plaintiff's performance accounted for 54% of the team's overall performance achievements, according to annual productivity reports. However, despite this outstanding performance by Plaintiff, Plaintiff received multiple negative commission statements while her male counterparts received positive commission statements, and their salaries remain disparately unequal. Plaintiff challenged the commission's computation about her alleged negative performance *three* times with Mr. Eyre and Mr. Greg Dalforno, the Vice President who is responsible for all of commissions' handlings, until it was corrected to reflect the truth. Male comparators of the same title and rank as Plaintiff were being paid $100,000 more than Plaintiff. Plaintiff's salary is $120,000 per year, and the male comparators with less seniority at Calix and with same title and rank as Plaintiff are being paid $220,000 per year (as of March 20, 2017 until present date).

21. On January 23, 2018, at the Italian Room Foyer of the Westin San Francisco hotel Grand Ballroom, awaiting entrance to the evening session of the Calix Sales Kickoff 2018 activities, Plaintiff approached Ms. Rebekah Cremer, the Director of Talent and Culture (Human Resources) at Calix, to discuss her concerns. She asked Ms. Cremer if Ms. Cremer could check on the pay discrepancy of Plaintiff compared with male employees, because that is part of Ms. Cremer's job. However, Plaintiff's concerns were never addressed.

B. **Plaintiff is Told That She is "Overly Aggressive"**

22. On or about July 11, 2017, during Plaintiff's individual sales member meeting, an issue was brought up to Plaintiff that she was being "overly aggressive" at work. This complaint was presented by Mark Johnson, Regional Vice President of the Mid-Atlantic operations at Calix, on behalf of Dennis Hensley (Infrastructure Sales team member). This complaint was made to Plaintiff after her completion of a $452,000 sale of Calix Marketing Cloud to Horry Telephone, which is one of Mr. Hensley's main accounts.

23. On or about October 9, 2017, during her scheduled individual sales member meeting, Mr. Eyre yet again told Plaintiff to not be "overly aggressive" at work, and that he had received

COMPLAINT FOR DAMAGES

"another" complaint of her allegedly being that way. He suggested that they figure out a way to get the situation under control. Plaintiff was confused and offered to send to him recorded Zoom meeting sessions in which she was a participant, and also presentations that she had completed for examination and review, in order to aid him in pointing out these so-called aggressive behaviors. But Mr. Eyre took no further action at that time, nor did he respond to Plaintiff's email with her presentation examples attached.

24.   On January 25, 2018, during an individual sales member meeting at the restaurant in the lobby of the Westin San Francisco Hotel, Mr. Eyre again referred to complaints he claimed to receive about Plaintiff being "overly aggressive." He told her that in the South [of the U.S.], there is an overtone of racism, and that Plaintiff, a black woman, would probably fare better if she sold products in the North [of the U.S.] He also said, "If you were a middle-age white male, you would be patted on the back for the same thing [being seen as aggressive], but because you are a black woman they deem it overly aggressive.  People have asked why I am wearing these bracelets and I told them because I want to.  It's our job to get people like Mark and Dennis to like us and want to work with us."  Plaintiff responded with, "But they can't say that, even if it were true.  That is not right."  Mr. Eyre responded, "I know."

25.   On February 13, 2018, during Plaintiff's individual sales member meeting via Zoom video session, she again addressed the "overly aggressive" complaints that she had received.  Mark Johnson used the literal phrase, "We don't want to be overly aggressive" in referring to attempts to close out the remaining business of 2017, confirming to Plaintiff that he was one of the original conspirators to the campaign to malign Plaintiff.  Plaintiff also learned at this meeting from another member of the infrastructure team that Mr. Johnson and Mr. Hensley had previously used "overly aggressive" allegations in a campaign with senior management to have a black engineer reassigned away from their support team in 2015.

26.   On April 4, 2018, Plaintiff was copied on an email sent by Bob Carrick to Michael Weening (EVP, Sales) and Mr. Eyre. In the email, he accused a female salesperson of telling one of the Calix clients that "selling our cloud product at this price is a joke." As Plaintiff was the sole female member of the Cloud Solutions Sales team, it was clear that Mr. Carrick was

COMPLAINT FOR DAMAGES

referring to Plaintiff. Despite having sought guidance from Mr. Eyre, Diane Prins Shedahl (VP of Talent & Culture), and Rebekah Cremer (Director, Talent & Culture) on multiple occasions, Plaintiff reached no resolve in the "aggressiveness" campaign against her and finally reached out to the Employee Assistance Program for counsel and assistance on how to navigate the issue.  This caused Plaintiff a lot of stress, and Plaintiff subsequently suffered a stroke days later. Plaintiff officially has been away from her position since April 11, 2018.

        C.       **<u>Plaintiff Was Retaliated Against for Speaking Out About Discrimination Against Her</u>**

27.      On October 30, 2017, Bob Carrick told Derek Kiger and Eric Mal, "I need a quick sale, even if I have to steal it." Mr. Mal relayed the statement to Plaintiff and suggested that she beware Mr. Carrick.  On November 3, 2017, Mr. Mal told Plaintiff that Mr. Carrick told him and Mr. Kiger, "No, I am not going to scoop you guys, I'm going to scoop *her*."  He was referring to Plaintiff, his only female teammate.  Mr. Mal subsequently told Plaintiff, "You better watch out for the guy. He has it out for you."  In a later conversation with Derek Kiger, Mr. Mal referred to Mr. Carrick as a "bad dude" for making that comment. Mr. Mal gave account to Plaintiff later that day, and stated Mr. Kiger had told him to "just stay out of it, she knows what's going on." Plaintiff then reached out to Mr. Eyre by phone to discuss the "scooping" activity of Mr. Carrick, only to be dismissed and told, "Go focus on your sales." Plaintiff sent a meeting request via email to Diane Prins Shedahl, VP of Talent & Culture, hoping to seek assistance on how to navigate appropriately the scooping claims and allegations of Plaintiff being "overly aggressive."  Plaintiff never received a response from Ms. Prins Shedahl.

28.      On November 7, 2017, Plaintiff made a phone call to Ms. Prins Shedahl to seek advice from the female executive about her experiences of feeling discriminated against based on her sex and her race. Again, Ms. Prins Shedahl did not answer, so Plaintiff called Ms. Rebekah Cremer and asked her if Plaintiff could seek counsel on navigating around the "good old boys club" at Calix. Ms. Cremer agreed to listen and stated that if it were "too bad" she would make a formal note of it, which Plaintiff asked her to not do just yet. Plaintiff suggested

COMPLAINT FOR DAMAGES

taking her thoughts and suggestions directly to Mr. Eyre during their scheduled individual meeting on November 9, 2017, and Plaintiff and Ms. Cremer agreed that Plaintiff would do so and report back to Ms. Cremer about the meeting.

29. On November 9, 2017, Plaintiff had the one-on-one meeting with Mr. Eyre on Zoom video session. Plaintiff aired her concerns regarding the redistribution of her covered accounts to male employees and how she felt cheated out of a promotion that she deserved more than her male colleague Bob Carrick, who got the promotion instead. Mr. Eyre brushed aside her grievance and instructed her: "Go focus on making sales. Pay attention to that and maybe I will reconsider." Plaintiff informed Ms. Cremer of the meeting and what was said by both parties. Ms. Cremer stated that she would have a talk with Mr. Eyre during a Zoom meeting they had scheduled for later that day. She mentioned she would have to officially document the matter at this point.

30. On November 10, 2017, during a scheduled full team sales meeting, Mr. Eyre announced that more of the coverage territory and core accounts would be covered by Bob Carrick. Plaintiff could only assume this was the result of Ms. Cremer's conversations with Mr. Eyre from the previous day, because Plaintiff's male team members' coverage territory remained the same – with the exception of Mr. Carrick, whose territory increased by adding territory taken from Plaintiff's accounts.

**FIRST CLAIM**

**VIOLATION OF THE CALIFORNIA EQUAL PAY ACT AND TITLE VII**

Plaintiff incorporates the allegations of the preceding paragraphs by reference.

31. Defendant violated Equal Pay Act (EPA), 29 U.S.C. § 206(d) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, because Defendant pays Plaintiff much less than her similarly situated male co-workers. Plaintiff alleged same in her EEOC complaint.

32. On October 6, 2015, California Governor Jerry Brown signed into law the California Fair Pay Act (Senate Bill 358) after unanimous passage with a 39-0 vote by the California Senate on August 31. This law, codified at Labor Code Section 1197.5, requires that men

COMPLAINT FOR DAMAGES

and women receive equal pay for "substantially similar work" (not the "same work" as previously required), regardless of whether they work at the same physical location; modifies the business justification defense that may be asserted by employers to except an otherwise-prohibited pay discrepancy from the equal pay requirement based on a recognized justification (e.g., a seniority, merit, or quality/quantity-based pay system) by requiring the employer to establish that the business justification (i) accounted for the entire wage discrepancy and (ii) was reasonably relied upon by the employer; prohibits employers from precluding employees from discussing their wages, discussing the wages of others, inquiring about others' wages, or aiding or encouraging any other employee to exercise his or her rights under the Act; and increases employers' record-keeping obligations from two to three years.

33. Employees may file civil actions to recover wages, or file complaints with California's Division of Labor Standards Enforcement for unlawful wage discrepancies. The statute of limitations is two years "after the cause of action occurs" or three years for willful violations. The Act also prohibits retaliatory actions against employees who "invoke or assist" in the enforcement of the equal pay requirements and allows civil claims for reinstatement, lost wages and benefits, interest, and "appropriate equitable relief" against employers who do take retaliatory actions.

34. At Calix as to Plaintiff, the similarly situated male co-workers performed work under similar working conditions that required the same skills, efforts, and responsibilities. They all hold the same job title and rank, and performed the same sales duties, but the pay discrepancy is approximately $100,000 a year. Also, Plaintiff was more senior than at least one male co-worker who received higher salary and bonuses than she, and her performance had been nothing short of stellar. Plaintiff and her male co-workers performed the same jobs (selling to and interacting with clients) under similar working conditions at the same company, and were supervised by the same supervisors. 29 U.S.C. § 206(d)(1).

COMPLAINT FOR DAMAGES

35. Plaintiff was the first hired in her role in her department at Calix on March 20, 2017. Five men were subsequently hired in the same role, comparator co-employees paid considerably more and/or treated considerably more favorably than Plaintiff:

36. Derek Kiger, a white male who was promoted internally to the position April 5, 2017 and subsequently left the company in October 2019;

37. Erik Mal, a dark-skinned man born in southern India and residing in Canada who began October 16, 2017;

38. Bob Carrick, a white male who also started October 16, 2017;

39. Jeff Lundgren, a white male who started on or about December 1, 2017; and

40. Noki Cheonim, a Japanese-American man who started on or about December 1, 2017.

41. Calix Inc. is vicariously liable for any violations of the Equal Pay Act and Title VII.

## SECOND CLAIM

## GENDER/SEX DISCRIMINATION IN VIOLATION OF TITLE VII

Plaintiff incorporates the allegations of the preceding paragraphs by reference.

42. Defendant discriminated against Plaintiff based on her sex by stereotyping her actions and behavior to the conformity of how a woman supposedly ought to act. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.

43. Plaintiff was paid less than less-competent and less-qualified men and was not promoted because she was "too aggressive," which was considered inappropriate because she is a woman. Therefore, by failing to promote Plaintiff for this reason, Defendant engaged in gender stereotyping and unlawful sex discrimination under Title VII. *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

44. A sexually charged, hostile work environment persisted. Calix employee Richard Link worked for Calix as an account manager during the course of the events outlined above. Plaintiff had been talking with him long-distance about trying together to get Windstream as a customer. She spoke with Link in person at the October 31, 2017 conference in Las Vegas.

COMPLAINT FOR DAMAGES

There, Link introduced her to the head engineer of Windstream, which is the conversation on which Carrick was eavesdropping.

45. On November 1, 2017, Plaintiff attended a dinner meeting at which Tim Pillow, Vice President who services the Century Link account, queried whether Plaintiff planned to wear "a nice dress and heels" to meet the Century Link business contacts in person.

46. A few weeks later, Link contacted Plaintiff to tell her that Carrick was being given the account. He prefaced the news with, "So what are we, a one-night stand?" Plaintiff found the comment to be offensive because she and he had a strictly professional relationship.

47. Calix Inc. is liable for gender/sex discrimination in violation of Title VII.

## THIRD CLAIM

## RETALIATION IN VIOLATION OF TITLE VII

Plaintiff incorporates the allegations of the preceding paragraphs by reference.

48. Defendant unlawfully retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.

49. Plaintiff engaged in the protected activity of complaining to Calix's HR director on November 7, 2017, about the discriminatory treatment she suffered at the workplace based on her race and sex. On November 10, 2017, one of Plaintiff's supervisors took away Plaintiff's accounts and gave them to a less-senior male co-worker, who is the same co-worker that gets paid a higher salary than Plaintiff, and this constitutes a materially adverse employment action against Plaintiff. Plaintiff lost out on bonuses and additional pay as a result. Due to the temporal proximity (a mere few days) of the complaint and the adverse employment action, the adverse action was causally connected to the protected activity. The complaint lodged by Plaintiff was a but-for cause of the adverse action because up until that point, there was no other reason – especially based on her stellar performance – for Plaintiff's accounts to suddenly be assigned to another employee.

50. Calix Inc. is vicariously liable for any of its employees' retaliatory actions because Mr. Eyre is in a managerial or supervisory capacity of Plaintiff, and thus has authority over Plaintiff. *Vance v. Ball State University*, 570 U.S. 421, 424 (2013).

COMPLAINT FOR DAMAGES

51.     It is unquestionable that the employer, Calix Inc., empowered the decision upon Mr. Eyre. At the very least, Calix should have known or did know about retaliatory action against Plaintiff, as she officially filed it with the Human Resources Director, and Calix failed to take any remedial action to correct Plaintiff's discrimination concerns.

## FOURTH CLAIM

## RETALIATION IN VIOLATION OF TITLE VII AND §1981

Plaintiff incorporates the allegations of the preceding paragraphs by reference.

52.     Defendant unlawfully retaliated against Plaintiff in violation of §1981 of the Civil Rights Act of 1866, at Title VII at 42 U.S.C.

53.     Plaintiff engaged in the protected activity of complaining to Calix's HR director about the discriminatory treatments she received at the workplace based on her race, comments made by her supervisor about her being a "black woman," and so forth. On November 10, 2017, one of Plaintiff's supervisors, Mr. Eyre, took away Plaintiff's accounts and gave them to a less-senior male co-worker, which is the same co-worker who gets paid a higher salary than Plaintiff, and this constitutes a materially adverse employment action against Plaintiff. Due to the temporal proximity (a mere few days) of the complaint and the adverse employment action, the adverse action was causally connected to the protected activity.

54.     Calix Inc. is vicariously liable for any of its employees' retaliatory actions because Mr. Eyre is in a managerial or supervisory capacity of Plaintiff, and thus has authority over Plaintiff. *Vance v. Ball State University*, 570 U.S. 421, 424 (2013). It is unquestionable that the employer, Calix Inc., empowered the decision upon Mr. Eyre. At the very least, Calix should have known or did know about retaliatory actions against Plaintiff, as she officially filed it with the Human Resources Director, and Calix failed to take any remedial action to correct Plaintiff's discrimination concerns.

## FIFTH CLAIM

## RACE DISCRIMINATION IN VIOLATION OF TITLE VII AND §1981

Plaintiff incorporates the allegations of the preceding paragraphs by reference.

COMPLAINT FOR DAMAGES

55. Defendant Calix Inc., violated the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and §1981 of the Civil Rights Act of 1866, 42 U.S.C. by discrimination Plaintiff on the basis of her race.

56. Plaintiff is a member of a protected class (African-American), she was qualified for and applied for an available position of Senior Cloud Solutions Specialist. However, despite being qualified, Plaintiff was rejected for the position, and Bob Carrick, a white male employee who had joined the company three weeks prior to his promotion, got the promotion instead. Further, Plaintiff was paid less than similar situated non-black coworkers.

57. Calix Inc., is vicariously liable for race discrimination in violation of Title VII and §1981.

## SIXTH CLAIM

## DISABILITY DISCRIMINATION

Plaintiff incorporates the allegations of the preceding paragraphs by reference.

58. Defendant discriminated against Plaintiff's disability status in violation of Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a).

59. Plaintiff suffered a stroke in 2017 as a result of the stress she endured from the workplace discrimination. This caused a major physical impairment that substantially limited one or more of her major life activities, and since then, she has been stationed at home. Plaintiff's stroke was officially noted by Calix Inc. Therefore, Plaintiff is also regarded as having such impairment, as her long-time absence would indicate to her co-workers and superiors.

60. Despite requesting reasonable accommodations to return to work, Plaintiff was not afforded the opportunity to do so, so she has been on leave since the stroke left her impaired.

61. Defendant's act in not accommodating Plaintiff's disability is a violation of the ADA.

62. Calix Inc., is vicariously liable for disability discrimination in violation of the ADA.

## SEVENTH CLAIM

## FAILURE TO ACCOMMODATE

Plaintiff incorporates the allegations of the preceding paragraphs by reference.

COMPLAINT FOR DAMAGES

63.     Defendant failed to accommodate Plaintiff in violation of Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a).

64.     Plaintiff suffered a stroke in 2017 as a result of the stress she endured from the workplace discrimination. This caused a major physical impairment that substantially limited one or more of her major life activities. She was stationed at home thereafter through April 9, 2018, when she was placed on disability leave.

65.     Plaintiff wrote to Human Resources in October 2018 that she wanted to return to work. She requested a part-time (20 hour per week) accommodation, but she was told in writing that the position was not designed for part-time hours. However, that is not the case. In fact, at approximately the same time, a similarly situated white male was given a lighter workload and fewer work days to accommodate his cancer.

66.     Defendant unreasonably denied Plaintiff's requests for reasonable accommodations to return to work.

67.     Defendant's failure to accommodate Plaintiff is a violation of the ADA.

68.     Calix Inc., is vicariously liable for disability discrimination in violation of the ADA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Tracy Hankins, respectfully requests that this Court enter a judgment in her favor, and grant the following relief:

1.      Compensatory Damages not limited to, but including damages for future loss, emotional distress, pain and suffering, inconvenience, and mental anguish;

2.      Punitive Damages;

3.      Back pay and Lost wages;

4.      Liquidated damages;

5.      Injunctive relief, that the Court order Defendant to reinstate Plaintiff at work with reasonable accommodations;

6.      Attorneys' Fees and Costs; and

7.      Any other further relief that this Court deems just and proper.

///

COMPLAINT FOR DAMAGES

# **JURY DEMAND**

Plaintiff hereby demands a jury trial on all causes of action to which she has a right to jury trial.

Date: November 15, 2019

/s/ Richard A. Hoyer_____
Richard A. Hoyer
HOYER & HICKS
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
tel (415) 766-3539
fax (415) 276-1738
rhoyer@hoyerlaw.com

/s/ Amos N. Jones_____
Amos N. Jones
Su Mi Park
AMOS JONES LAW FIRM
1150 K Street NW
Washington D.C., 20005
tel (202) 351-6187
fax (202) 478-1654
jones@amosjoneslawfirm.com
park@amosjoneslaw.com
*pro hac vice admission pending*

*Attorneys for Plaintiff*
TRACY HANKINS

COMPLAINT FOR DAMAGES